**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5236-16T4

C.J.,

        Plaintiff-Respondent/
Cross-Appellant,

v.

D.J.,

        Defendant-Appellant/
Cross-Respondent.

_____

Argued telephonically February 15, 2019 –
Decided April 1, 2019

Before Judges Gilson and Natali.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FM-20-0002-10.

James C. Jensen argued the cause for appellant/cross-respondent (Laufer, Dalena, Cadicina, Jensen & Boyd, LLC, attorneys; James C. Jensen, of counsel and on the briefs).

Salvatore A. Simeone argued the cause for respondent/cross-appellant (Weiner Law Group, LLP, attorneys; Salvatore A. Simeone, on the brief).

PER CURIAM

In this post-divorce-judgment matter, defendant D.J., the former husband, appeals from a provision of a December 22, 2016 order denying his motion to reduce his alimony obligation to plaintiff C.J., his former wife.[1]  Defendant also appeals from a July 10, 2017 order denying reconsideration.  Plaintiff cross-appeals from the provision of the July 10, 2017 order denying her request for attorney's fees on the motion for reconsideration.  Having reviewed the parties' arguments in light of the record, we reverse the provisions of the orders that denied defendant's motion to reduce his alimony obligation and remand for a plenary hearing on that issue.  We affirm the denial of plaintiff's request for an award of attorney's fees on the motion for reconsideration.

## I.

The parties were married in September 1988, and divorced in February 2007.  They have two children:  a son born in July 1995, and a daughter born in December 1997.

---

[1]  We use initials to protect the parties' privacy interests.  See R. 1:38-3(d).

At the time of their divorce, the parties entered into a marital settlement agreement (MSA), which was incorporated into their judgment of divorce. In the MSA, defendant agreed to pay plaintiff "permanent" alimony of $120,000 per year. That alimony was based on "the imputation of a gross earned income of $450,000 to Husband and $50,000 to Wife." The MSA states that defendant's alimony obligation could be reduced if his income "involuntarily drop[s] below the amount of $450,000 for one year[.]" Specifically, the MSA provides:

> [I]t is agreed that Husband's support obligation is based upon a minimum annual gross income of $450,000. Recognizing the volatility of his industry and the inherent insecurity of employment, particularly given the fact that Husband's company is engaged in a merger and employee "attrition" may be substantial, it is further agreed that should Husband's gross income involuntarily drop below the amount of $450,000 for one year, it will be deemed a change of circumstances sufficient to justify Husband's application for a reduction, but shall not constitute prima facie evidence of Husband's entitlement to such a reduction, which the parties acknowledge will be dependent upon additional factors.

Both parties also acknowledged in the MSA that, "[i]n connection with the payment, modification or termination of alimony[,]" they had been advised of the statute and case law governing the establishment, modification, or termination of alimony. In that regard, the MSA cited to <u>Lepis v. Lepis</u>, 83 N.J. 139 (1980); <u>Crews v. Crews</u>, 164 N.J. 11 (2000); <u>Morris v. Morris</u>, 263 N.J.

Super. 237 (App. Div. 1993); <u>Weishaus v. Weishaus</u>, 360 N.J. Super. 281 (App. Div. 2003), <u>rev'd in part and aff'd in part</u>, 180 N.J. 131 (2004); and the statutory factors set forth in N.J.S.A. 2A:34-23.

In April 2015, defendant filed a motion to reduce his support obligations.[2] In support of that motion, defendant represented that in May 2013, he had been terminated from his long-term employment at the Bank of New York Mellon (Bank of N.Y.). He also submitted a case information statement (CIS), attaching his 2014 federal tax return. Defendant asserted that his income had dropped below $450,000. His 2014 tax return listed his "total income" as $377,333. The tax return also included Form 1116, which listed defendant's "gross income" in 2014 as $462,275. The majority of defendant's income in 2014 was listed as coming from a financial and business consulting firm defendant had established.

Plaintiff opposed defendant's motion to reduce his alimony obligation. She contended that defendant had been terminated from Bank of N.Y. for misconduct and, thus, his termination was not involuntary. She also argued that his income had not dropped below $450,000. In that regard, she pointed out that one of his 2014 tax forms listed his income as $462,275. She also contended

---

[2] In his motion, defendant sought relief beyond reduction of his alimony obligation. On this appeal, however, defendant has limited his arguments to challenging the denial of his motion to reduce his alimony obligation.

4

that defendant's income from his consulting business appeared to have been derived from his service as a director of a supermarket company.

In July 2015, the family court heard oral argument on defendant's 2015 motion, but did not conduct an evidentiary hearing. Based on the papers filed by the parties, the court found that defendant had not established that his income had fallen below $450,000 for a year. The court also held that defendant's termination from Bank of N.Y. was voluntary because it resulted from defendant's misconduct. Thus, in an order entered on July 9, 2015, the court denied defendant's motion to reduce his support obligations.

Defendant filed a motion for reconsideration, which was denied in an order entered on December 2, 2015, accompanied by a written opinion. In that written opinion the judge clarified that, based on defendant's 2014 tax return, he had found defendant's 2014 income to be either $377,333 or $462,275 and, thus, he had denied defendant's motion. Three weeks later, on December 22, 2015, defendant filed a notice in the Appellate Division to appeal the order of December 2, 2015. Plaintiff filed a cross-appeal challenging the denial of her request for attorney's fees.

In May 2016, defendant filed another motion before the family court to reduce his support obligations. Because his appeal of the December 2, 2015

order was still pending, defendant eventually dismissed that appeal so that he could pursue his new motion. Plaintiff also voluntarily dismissed her cross-appeal of the December 2, 2015 order.

In support of his May 2016 motion, defendant filed a new CIS, which attached his 2015 tax return. He claimed that his total income in 2015 was $160,610, and his adjusted gross income was a negative $10,888, primarily because he had paid plaintiff $120,000 in alimony. Defendant also represented that his net worth had declined by over $426,000, from $2,131,356 in 2014 to $1,704,572 in 2015. Defendant also submitted a certification in which he disputed that his termination from Bank of N.Y. was voluntary, represented that he had searched for other employment, and contended that he expected that his future income would be approximately $150,000 to $175,000 per year, which he expected to earn from his consulting business.

Plaintiff opposed defendant's May 2016 motion and she cross-moved to recover her attorney's fees. Following an unsuccessful mediation, a different family judge decided the 2016 motions on the papers. That judge denied defendant's motion in an order entered on December 22, 2016. The judge also issued a letter opinion explaining his decision.

In essence, the family court found that the motion defendant filed in May 2016 was "substantially the same" motion presented to and denied by a different family judge in 2015. Relying on our decision in Donnelly v. Donnelly, 405 N.J. Super. 117 (App. Div. 2009), the second family judge reasoned that the rulings in July 2015 and December 2015 were "law of the case." Moreover, the second judge found that defendant had failed to submit "additional information or facts," beyond what had been submitted in 2015, to establish a prima facie showing of a change in his financial circumstances. In an order dated January 9, 2017, the court granted plaintiff's cross-motion for attorney's fees and awarded her $13,288.50.

On January 30, 2017, defendant filed a notice of motion to reconsider the December 22, 2016 order. The parties again attended mediation, but mediation was not successful. Plaintiff, thereafter, cross-moved for attorney's fees on the motion for reconsideration.

On July 10, 2017, the same family judge who issued the December 22, 2016 order denied defendant's motion for reconsideration. The judge also denied plaintiff's request for attorney's fees in opposing the motion for reconsideration. The judge issued a written statement of reasons explaining his rulings. In short, the judge found that defendant had not presented any new

7

arguments on reconsideration and the judge denied the motion for the reasons explained in the court's December 22, 2016 letter opinion.

Defendant now appeals from the portions of the December 22, 2016 and July 10, 2017 orders that denied his motion to reduce his alimony obligation. Plaintiff cross-appeals from the provision of the July 10, 2017 order that denied her request for attorney's fees incurred in opposing the motion for reconsideration.

## II.

A motion to modify an alimony obligation "rests upon its own particular footing and [we] must give due recognition to the wide discretion which our law rightly affords to the trial judges who deal with these matters." Larbig v. Larbig, 384 N.J. Super. 17, 21 (App. Div. 2006) (quoting Martindell v. Martindell, 21 N.J. 341, 355 (1956)). Consequently, "we accord great deference to discretionary decisions of Family Part judges." Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (citing Donnelly, 405 N.J. Super. at 127). We generally defer to factual findings made by a family court when such findings are supported by substantial and credible evidence. Gnall v. Gnall, 222 N.J. 414, 428 (2015) (citing Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). In contrast, "trial judge[s'] legal conclusions, and the application of those

conclusions to the facts, are subject to our plenary review." <u>Reese v. Weis</u>, 430 N.J. Super. 552, 568 (App. Div. 2013) (citing <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995)).

Several well-established principles govern whether a court should modify or terminate alimony. First, if the parties had originally agreed to the amount and conditions of alimony, that agreement should be enforced like any other settlement agreement. <u>Quinn v. Quinn</u>, 225 N.J. 34, 44-46 (2016). "A settlement agreement is governed by basic contract principles." <u>Id.</u> at 45 (citing <u>J.B. v. W.B.</u>, 215 N.J. 305, 326 (2013)). Accordingly, a court's role is to "discern and implement the intentions of the parties" as expressed in the agreement. <u>Ibid.</u> (citing <u>Pacifico v. Pacifico</u>, 190 N.J. 258, 266 (2007)).

Second, unless the parties have agreed otherwise, alimony "may be revised and altered by the court from time to time as circumstances may require." N.J.S.A. 2A:34-23. To justify a modification or termination, the moving party must show "changed circumstances." <u>Lepis</u>, 83 N.J. at 146. In <u>Lepis</u>, the Court recognized a non-exhaustive list of factors that give rise to changed circumstances warranting modification or termination of alimony. <u>Id.</u> at 151-52. Similarly, in N.J.S.A. 2A:34-23(k) and (l), the Legislature identified factors a court needs to consider when a party seeks to modify alimony. Those factors

include, among other things, the financial circumstances of the parties, whether the change in circumstances is temporary or permanent, whether the change was voluntary, whether it was motivated by bad faith or a desire to avoid payment, and whether the change in circumstances renders the payor unable to meet the alimony obligation. See N.J.S.A. 2A:34-23(k) to (l); see also Lepis, 83 N.J. at 151-52; Larbig, 384 N.J. Super. at 22-23; Glass v. Glass, 366 N.J. Super. 357, 370-71 (App. Div. 2004).

Third, in appropriate circumstances, a party may be bound by findings made on prior motions to modify, reduce, or terminate alimony. See Donnelly, 405 N.J. Super. at 127-28. Accordingly, if a party makes a motion to change alimony and the family court makes factual findings regarding that motion, the parties may be bound by those findings in a subsequent motion if circumstances have not changed. For example, in Donnelly, a former husband moved to reduce his support obligations. The husband had previously filed a motion to reduce his obligations, the court had conducted a plenary hearing, made factual findings, and denied the first motion. On the second motion, we recognized that the family judge "was not required to wipe the slate clean" and the judge could consider the factual findings made on the first motion if there was a limited

passage of time between the motions and if the moving party presented no new material information showing a change of circumstances.  Ibid.

Applying our standard of review and the legal principles governing alimony, we are constrained to remand for a plenary hearing to address whether defendant has established a change of circumstances warranting a reduction in his alimony obligation.  In support of his motion filed in 2016, defendant submitted a new CIS and his 2015 tax returns.  The federal tax return showed that defendant's total income in 2015 was $160,610.  That income figure establishes the showing required by the parties' MSA because defendant's identified income for the full year of 2015 was below $450,000.

Obviously, plaintiff was and is entitled to dispute whether defendant's income had truly fallen below $450,000 for a full year, and whether that reduction was "involuntary."  In that regard, plaintiff challenges defendant's failure to find employment that could have provided him with a salary equivalent to what he was earning at Bank of N.Y.  Those disputes, however, are genuine factual disputes that require discovery and resolution at a plenary evidentiary hearing.  See Segal v. Lynch, 211 N.J. 230, 264-65 (2012).

Moreover, the CIS and certification defendant filed in support of his 2016 motion were materially different from the information he had submitted in

support of his motion filed in 2015. Most significantly, defendant had supplied an updated CIS and his 2015 tax returns. Defendant's 2014 tax return identified his income as either $377,333 or $462,275. In contrast, his 2015 federal tax return identified his income as $160,610. Furthermore, defendant submitted a certification contending that he had diligently searched for alternative employment, but, given his age, he had not been offered a position that would allow him to earn income equivalent to what he had earned at Bank of N.Y.

In addition, the question of a voluntary or involuntary drop in income was different in the 2016 motion compared to the 2015 motion. In the 2015 motion, the question was whether defendant's termination from Bank of N.Y. was voluntary or involuntary. Defendant lost his job at Bank of N.Y. in 2013. Thus, in the 2015 motion, the focus was comparing his income from 2013 to 2014.

In the 2016 motion, the question was whether defendant's drop in income from 2014 to 2015 was voluntary or involuntary. Defendant represented that in 2014 and 2015, he derived his income from his consulting business and from work he performed as a director of a supermarket company. Again, plaintiff is entitled to dispute whether defendant's income voluntarily or involuntarily dropped between 2014 and 2015. Resolution of that material factual dispute, however, will require discovery and a plenary hearing.

A-5236-16T4

Both parties argue that the rulings on the 2015 motion establish "law of the case" that bound the second family judge in ruling on the 2016 motions. We disagree. The law-of-the-case doctrine generally applies to definitive rulings made on an earlier motion. See Lombardi v. Masso, 207 N.J. 517, 539 (2011). The doctrine "is a non-binding rule intended 'to prevent relitigation of a previously resolved issue.'" Jacoby v. Jacoby, 427 N.J. Super. 109, 117 (App. Div. 2012) (quoting In re Estate of Stockdale, 196 N.J. 275, 311 (2008)). "When applicable, it prohibits 'a second judge on the same level, in the absence of additional developments or proofs, from differing with an earlier ruling[.]'" Ibid. (alteration in original) (quoting Hart v. City of Jersey City, 308 N.J. Super. 487, 497 (App. Div. 1998)).

The law-of-the-case doctrine was not applicable here. The decision on the motion in 2015 was not a definitive ruling. Instead, it was a ruling made on the papers based on the submissions filed in 2015. In moving in 2016, defendant submitted an additional year's worth of income and employment information. Thus, there were additional "proofs" for the court to consider in 2016.

We fully appreciate the second family judge's concern that defendant had filed his 2016 motion shortly after the denial of his motion for reconsideration of the 2015 motion. In that regard, it is appropriate to consider the duration of

13

the alleged change in circumstance and whether that change is only temporary. See Lepis, 83 N.J. at 151; Larbig, 384 N.J. Super. at 22-23; Donnelly, 405 N.J. Super. at 127-29. Here, however, the judge who heard and decided the 2015 motion did not conduct a plenary hearing. In contrast, in Donnelly, the family court had conducted a plenary hearing on the first motion. 405 N.J. Super. at 122-23. Findings made following a plenary hearing are entitled to substantial weight. See Cesare, 154 N.J. at 411-13. Findings made without an evidentiary hearing, however, may not be entitled to the same amount of weight if there are subsequent changes of circumstances. See Bisbing v. Bisbing, 445 N.J. Super. 207, 213 (App. Div. 2016) (declining to defer to a family court's decision where that court "did not hold a plenary hearing").

In summary, the motion defendant filed in 2016 presented genuine issues of material fact disputes concerning whether his income had fallen below $450,000 for a year, whether the drop in income was the result of voluntary or involuntary actions, and whether defendant can establish the other factors entitling him to a reduced alimony obligation. We, therefore, reverse the portion of the orders entered on December 22, 2016, and July 10, 2017, that denied defendant's motion to reduce his alimony obligation. Furthermore, we remand for a plenary hearing. In connection with the plenary hearing, the family court

can allow appropriate discovery and should require defendant to file an analysis concerning his self-employment. See N.J.S.A. 2A:34-23(l).

Finally, on plaintiff's cross-appeal, we affirm the denial of her request for attorney's fees incurred in opposing the motion for reconsideration. The family court set forth the appropriate analysis in denying that fee request. See R. 5:3-5(c); R. 4:42-9; N.J.S.A. 2A:34-23. We discern no abuse of discretion in that decision. See Slutsky v. Slutsky, 451 N.J. Super. 332, 365-66 (App. Div. 2017). Moreover, having reversed the portion of the July 10, 2017 order that denied reconsideration on the motion to reduce defendant's alimony obligation, plaintiff is no longer the prevailing party on that portion of the motion.

Reversed in part, affirmed in part, and remanded for further proceedings.[3] We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] The orders entered on July 9, 2015, and December 2, 2015, were not part of this appeal. Accordingly, nothing in this decision affects those orders.

A-5236-16T4